**CONMED CORPORATION, and Aspen Laboratories, Inc., a wholly-owned subsidiary of ConMed Corporation, Plaintiffs,**

v.

**ERBE ELECTROMEDIZIN GMBH, and Erbe USA, Inc., Defendants.**

No. 00–CV–0987.

United States District Court, N.D. New York.

Jan. 16, 2003.

See also 129 F.Supp.2d 461.

188

Hancock & Estabrook LLP, Syracuse, NY (James R. Muldoon, Esq., John R. Powers, Esq., of counsel), for Plaintiffs ConMed Corporation and Aspen Laboratories, Inc.

Mackenzie, Smith, Lewis, Michell & Hughes LLP, Syracuse, NY (Dennis P. Hennigan, Esq., of counsel), for Defendants Erbe Electromedizin GmbH and Erbe USA, Inc.

Gardner, Carton & Douglas, Washington, DC, (Philip G. Hampton, Esq., Vernon W. Francissen, Esq., John D'Attomo, Esq.,

of Counsel), for Co–Counsel for Defendants Erbe Electromedizin GmbH and Erbe USA, Inc.

## MEMORANDUM–DECISION AND ORDER

HURD, District Judge.

### I. *INTRODUCTION*

On June 22, 2000, plaintiffs ConMed Corporation ("ConMed") and Aspen Laboratories, Inc. ("Aspen") (collectively "plaintiffs"), commenced the instant action against defendants Erbe Electromedizin GmbH and Erbe USA, Inc. (collectively "Erbe" or "defendants"), pursuant to 22 U.S.C. §§ 2201, 2202, and 1338, and the Patent Laws of the United States, Title 35 of the United States Code, and various state laws. Plaintiffs are asserting seven causes of action: *First*—for a declaratory judgment of non-infringement of patent; *Second*—a declaratory judgment of invalidity of patent; *Third*—a declaratory judgment of unenforceability of patent; *Fourth*—tortious interference with contractual relations; *Fifth*—tortious interference with prospective business relations; *Sixth*—false advertising and unfair competition in violation of the Lanham Act, 15 U.S.C. § 1125; and *Seventh*—common law unfair competition. The complaint seeks compensatory and punitive damages, attorneys' fees and costs, and injunctive relief.

Defendants moved to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6). This motion was denied in an amended memorandum decision and order dated March 7, 2001. *Conmed v. ERBE Electromedizin GmbH*, 129 F.Supp.2d 461 (N.D.N.Y.2001). Thereafter, defendants answered the complaint on March 26, 2001, and asserted seven counterclaims for:

*First*—direct patent infringement;[1] *Second*—induced patent infringement; *Third*—contributory patent infringement; *Fourth*—tortious interference with contractual relations; *Fifth*—tortious interference with prospective business relations; *Sixth*—false advertising and unfair competition in violation of the Lanham Act, 15 U.S.C. § 1125; and *Seventh*—common law unfair competition.

Plaintiffs now move for partial summary judgment pursuant to Fed.R.Civ.P. 56 seeking declaratory judgment on its first three causes of action regarding the non-infringement, invalidity, and unenforceability of the patent and dismissal of defendants' counter-claims for patent infringement against them. Defendants oppose, and cross-move for partial summary judgment pursuant to Rule 56 seeking declaratory judgment on the validity of the patent. Oral argument was heard on August 15, 2002, in Utica, New York. Decision was reserved.

### II. *FACTS*

The following are the undisputed facts in this case, and—where noted—the disputed facts as alleged by each side.

ConMed and Erbe are rival manufacturers of electrosurgical devices, accessories, and support equipment. Each sells a comparable argon gas-assisted gastrointestinal coagulation probe in the United States. ConMed's product line is known as the "Argon Beam Coagulation" ("ABC") series of products. The principal product in this series is the ConMed System 7500 ™ Electrosurgical Generator with ABC technology (the "ABC generator"), which is manufactured by Aspen. ConMed's ABC technology is fully pro-

---

1. This counterclaim was subsequently withdrawn by defendants after it became clear that plaintiffs do not manufacture an endo-

scope—which is the subject of defendants' patent.

tected under patents owned by the plaintiffs. ConMed's proprietary rights in the ABC system are based principally on U.S. Patent No. 4,781,175 (the "'175 patent" or "*McGreevy*"), which was issued on November 1, 1988. This generator has various attachable accessories for use in different surgical procedures. One such accessory, which is the specific product at issue in this lawsuit, is the ABC Flex Gl Probe (the "ABC probe").

Erbe manufactures and markets a rival system—the Erbe APC300™ "Argon Plasma Coagulator" (the "APC 300"). Just as with ConMed's system, the Erbe APC 300 system offers an argon gas-assisted GI probe as an accessory. *Defendants' probe is protected by United States Patent No. 5,720,745 (the " '745 patent") which is the patent at issue in this action.*

Both sides' electrosurgical devices work by passing electrical current through an inert stream of argon gas. Through the use of argon gas, the devices allow a surgeon to either cut or cauterize tissue with precision. Tissue is cut when sufficient energy is applied to vaporize the tissue. Tissue is cauterized when only enough electricity is applied to dehydrate it.

In 1992, Erbe filed a U.S. Patent Application No. 981,009 (the " '009 application") that disclosed a device and "method for coagulating tissue during endoscopic surgery by using argon plasma coagulation." The United States Patent and Trademark Office ("USPTO") rejected the '009 application based on obviousness, as well as other structural grounds. The patent examiner's rejection, which was affirmed by the Board of Patent Appeals (Muldoon Decl. Exh. 5), was based, in part, upon the

decision that it would have been obvious to one skilled in the relevant art to combine the teachings of two prior patents (*Manwaring* and *Trencosky*)[2] to achieve the invention at issue in the '009 application. The USPTO found that "[i]t would have been obvious to one of ordinary skill in the art to have provided the Trencosky et al. coagulator within a working channel of an endoscope to treat internal tissue ...." Erbe appealed this determination and lost.

After losing its appeal on the '009 application, Erbe filed a new patent application as a continuation-in-part ("CIP") of the '009 application. This patent application would ultimately issue as the '745 patent.[3] In an apparent effort to overcome the objections to the '009 application, the CIP application added new material and claim limitations. This application was rejected by the patent examiner as obvious in view of the teachings of *Manwaring, Canady,* and *Morrison, Jr.* Specifically, the examiner found that

> it would have been obvious to one of ordinary skill in the art to have provided the Manwaring endoscopic coagulator with an inert gas, such as argon, as the conductive fluid, particularly in view of the teaching of Canady. It would have been further obvious to have provided the Manwaring device, as modified by the teaching of Canady, with a very low flow rate of the inert gas to provide a non-laminar flow pattern to blanket the treatment tissue in view of the teaching of Morrison, Jr [sic] et al.

(Muldoon Decl. Exh. 7 at 6.)

On June 27, 1997, Erbe endeavored to distinguish the CIP application from the

---

2. *Manwaring* taught the use of a "streaming fluid" to perform internal endoscopic coagulation. U.S. Patent No. 5,122,138. *Trencosky* taught the use of an ionized inert gas. U.S. Patent No. 4,901,719.

3. Accordingly, for sake of clarity, this application will be referred to as the " 'CIP application' ". (U.S. Patent Application No. 08/579,879.)

prior art by claiming that its invention provided a "low gas flow rate" while *Canady*[4] disclosed flow rates in excess of one liter per minute and flow velocities of up to 19 kilometers per hour. Erbe sought to distinguish *Morrison, Jr.* by noting that *Morrisson, Jr.* taught "such a slow flow rate that a continuous HF electrical signal can not be applied," while Erbe's invention provided "a continuous high frequency electrical supply." (Muldoon Decl. Exh. 8 at 10–11.) Based on the limitations contained in its June 27, 1997 amendment, the USPTO allowed Erbe's claims, and the '745 patent was issued on September 18, 1997. (Muldoon Decl. Exh. 9.)

In late 1999, ConMed began marketing its ABC probe as an accessory to its ABC generator. The ABC probe uses a laminar jet of ionized argon gas to deliver energy to tissue. Erbe contends that when used in the manner taught by ConMed, the ABC probe generates a non-laminar argon gas flow for electrosurgical coagulation.

## III. *STANDARD OF REVIEW*

### A. *Summary Judgment*

Summary judgment must be granted when the pleadings, depositions, answers to interrogatories, admissions, and affidavits show that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Richardson v. New York State Dep't of Corr. Service,* 180 F.3d 426, 436 (2d Cir.1999). Facts, inferences therefrom, and ambiguities must be viewed in a light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538

(1986); *Richardson,* 180 F.3d at 436; *Project Release v. Prevost,* 722 F.2d 960, 968 (2d Cir.1983). Once the moving party has met the initial burden of demonstrating the absence of a genuine issue of material fact, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *Liberty Lobby, Inc.,* 477 U.S. at 250, 106 S.Ct. 2505; *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Matsushita Elec. Indus. Co.,* 475 U.S. at 587, 106 S.Ct. 1348. At that point the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.,* 475 U.S. at 586, 106 S.Ct. 1348. To withstand a summary judgment motion, sufficient evidence must exist upon which a reasonable jury could return a verdict for the nonmovant. *Liberty Lobby, Inc.,* 477 U.S. at 248, 106 S.Ct. 2505; *Matsushita Elec. Indus. Co.,* 475 U.S. at 587, 106 S.Ct. 1348.

## IV. *DISCUSSION*

The parties have raised numerous arguments in support of their motions and in opposition to their opponents' motions. Rather than addressing each argument separately, the parties' contentions will be considered in the context of deciding the two determinative issues—the validity of the '745 patent and whether the ABC probe infringes it.

### A. *Validity of the '745 Patent*

The validity of the '745 patent is the threshold consideration on the instant motions. If the '745 patent is not valid, it follows as a matter of law that ConMed's ABC probe cannot infringe it. According-

---

4. Erbe's APC probe is currently the subject of a patent infringement lawsuit pending in the U.S. District Court for the District of Colum-

bia by Jerome Canady, M.D. In that lawsuit, Erbe has attacked the validity of the '675 patent on, among other grounds, obviousness.

ly, it is appropriate to begin the analysis with a consideration of the parties' arguments directed toward the validity of Erbe's patent.

ConMed attacks the validity of the '745 patent on the grounds that (1) the patent claims were described in a publication more than one year prior to its filing date, and (2) Erbe has engaged in inequitable conduct before the USPTO and another district court.

■ The patent law, § 35 U.S.C. 282, provides that:

> A patent shall be presumed valid. Each claim of a patent (whether in independent, dependent, or multiple dependent form) shall be presumed valid independently of the validity of other claims; dependent or multiple dependent claims shall be presumed valid even though dependent upon an invalid claim. The burden of establishing invalidity of a patent or any claim thereof shall rest on the party asserting such invalidity.

35 U.S.C. § 282. *See TP Laboratories, Inc. v. Professional Positioners, Inc.,* 724 F.2d 965, 971 (Fed.Cir.1984); *Stratoflex, Inc. v. Aeroquip Corp.,* 713 F.2d 1530, 1540–1541 (Fed.Cir.1983). The party challenging a patent has the burden of proving a patent's invalidity, and the challenger must show by clear and convincing evidence that the patent is invalid. *See Helifix Ltd. v. Blok–Lok Ltd.,* 208 F.3d 1339, 1346 (Fed.Cir.2000).

This presumption of validity acts as a procedural device, requiring the court to begin with an assumption of the validity of the patent claims and to look to the challenger for proof of invalidity by clear and convincing evidence. *See Northern Telecom, Inc. v. Datapoint Corp.,* 908 F.2d 931, 935 (Fed.Cir.1990); *American Hoist and Derrick Co. v. Sowa & Sons, Inc.,* 725 F.2d 1350, 1359–1360 (Fed.Cir.1984); *Stratoflex,* 713 F.2d at 1534. Therefore, the party

challenging validity has both the procedural burden of production (proceeding first and establishing a prima facie case of invalidity), and the burden of persuasion on the ultimate merits of its claim of invalidity. The issue to be decided is whether, taken together, the evidence clearly and convincingly establishes that the patent can no longer be accepted as valid.

If the challenger fails to carry its burden of production or persuasion, the court may simply state that fact. It is not necessary to make an independent determination that the patent is valid, because it is presumed to be. *Id.,* at 1534 n. 3.

### 1. *Prior Art*

■ ConMed's first argument against the validity of the '745 patent is that the claimed invention was disclosed in two magazine articles published more than one year prior to the filing date of the patent application. These articles, which were co-authored by two of the inventors of the '745 patent, were considered by the patent examiner and specifically addressed in a March 28, 1997, Office Action. The examiner noted that:

> [t]he prior art made of record and not relied upon is considered pertinent to applicant's disclosure. The two *Endoscopic Surgery and Allied Technologies* papers . . . disclose many of the particulars of the endoscopic system set forth in the immediate application. It is noted that two of the inventors of the immediate application were also authors of these papers and that the priority date of the continuation-in-part application . . . predates these articles. The subject matter disclosed in the articles was also disclosed in the earlier application.

(Muldoon Decl. Exh. 7 at 8.)

ConMed challenges the applicability of the earlier priority date on the grounds

that "the CIP application contains substantial new matter not found in the parent application." (Pl. Mem. at 32.) ConMed cites *Studiengesellschaft Kohle M.B.H. v. Shell Oil Co.*, 112 F.3d 1561, 1564 (Fed.Cir. 1997), for the proposition that "[c]laims in a CIP application are not entitled to the benefit of the filing date of a parent application where they contain new subject matter not described in the earlier application." (Pl. Mem. at 32.) ConMed argues that Erbe's CIP application is not entitled to the 1992 priority date because it contained new matter relating to the formation of an "argon cloud" and described low flow rates.

This argument cannot be accepted because "although there may be some variation in the scope of the claimed subject matter," Erbe's claims in the CIP application are substantially based upon the disclosures contained in the parent application. *See Applied Materials, Inc. v. Advanced Semiconductor Materials America, Inc.*, 98 F.3d 1563, 1579 (Fed. Cir.1996) (concurring opinion). The subject matter of the CIP application and the '009 application were substantially similar, excepting only those modifications which were necessary to distinguish the CIP application from the prior art. Accordingly, the patent examiner correctly concluded that these articles did *not*, as ConMed now argues, predate the priority date of the '745 application. It is held, therefore, that ConMed has failed to rebut the presumption of patent validity based upon the prior publication of the two articles.

## 2. *Inequitable Conduct*

■ ConMed next argues that the '745 patent is invalid because of Erbe's inequitable conduct before the USPTO and the

district court for the District of Columbia. Where a party challenges the validity of a patent based upon an alleged intent to deceive or mislead the patent examiner, "clear and convincing evidence of conduct sufficient to support an inference of culpable intent [to deceive] is required." *Northern Telecom*, 908 F.2d at 939.

ConMed argues that the following supports an inference of culpable intent on the part of Erbe: (1) Erbe argued before the patent examiner that the use of argon gas as the "fluid" in the Manwaring patent was nonobvious, but took a contrary position in the litigation with Dr. Canady two days after receiving the '745 patent; [5] and (2) Erbe made the same arguments concerning Manwaring before the USPTO on a request for reexamination of the Canady patent. Because, ConMed argues, this position directly undercut Erbe's asserted basis for the novelty of the '745 patent, the advancement of it two days after receiving the '745 patent demonstrated an intent to deceive on the part of Erbe.

Erbe argues that ConMed has failed to produce clear and convincing evidence of an intent to deceive the patent examiner because "the duty [to disclose information] is limited to the individuals associated with the filing and prosecution of the patent application," and "the arguments cited by ConMed in the *Canady* litigation and reexamination were put forward by a different law firm from the firm responsible for prosecution of the '745 patent." (Def. Opp. at 10–11.) Erbe also argues that the issues relating to the validity of the *Canady* patent were different than those at issue in the prosecution of the '745 patent. While Erbe's argument is misplaced (in that the mere fact that different law firms were employed by Erbe is of little relevance to a

---

5. Erbe argued in support of its motion for summary judgment that "it is well known to

any high school chemistry student that gas is a fluid." (Muldoon Decl. Exh. 21 at 9.)

determination of its culpability), it is held that ConMed has failed to produce clear and convincing evidence sufficient to support an inference to deceive on the part of Erbe.

■■ Inequitable conduct includes affirmative misrepresentations of a material fact, failure to disclose material information, or submission of false material information, coupled with an intent to deceive. Determination of inequitable conduct requires a two-step analysis. First, the trial court must determine whether the withheld reference meets a threshold level of materiality. The trial court must then also determine whether the evidence shows a threshold level of intent to mislead the USPTO. Once the threshold levels of materiality and intent have been established, the trial court is required to weigh materiality and intent. The more material the omission, the less evidence of intent will be required in order to find that inequitable conduct has occurred. In light of all the circumstances, the court must then determine whether the applicant's conduct is so culpable that the patent should be held unenforceable. *See Baxter Int'l, Inc. v. McGaw, Inc.*, 149 F.3d 1321, 1327–28 (Fed. Cir.1998) (citation omitted).

■ In this case, ConMed has failed to meet its burden because it has failed to demonstrate any inequitable conduct on the part of Erbe. ConMed has not identified any information that was withheld by Erbe during the prosecution of the '745 patent, any fact that was misrepresented by Erbe, or any false information that was submitted by Erbe.[6] Instead, ConMed relies upon the apparently inconsistent arguments of counsel in two unrelated proceedings concerning the relative weight to be afforded to fully disclosed patents to conclude that Erbe misled the patent examiner. This showing is insufficient to clearly and convincingly demonstrate inequitable conduct on the part of Erbe. *See Goodyear Tire & Rubber Co. v. Hercules Tire & Rubber Co.*, 162 F.3d 1113, 1122 (Fed.Cir. 1998).

Even accepting ConMed's contention that the arguments are inconsistent, it is held that such arguments fail to demonstrate the requisite materiality. It is undisputed that Erbe did not conceal or withhold any documents or information from the patent examiner. Instead, it is alleged that Erbe merely proffered an argument to the patent examiner concerning the legal effect of materials already disclosed. The patent examiner was free to consider the scope and effect of these prior materials independently of the arguments of Erbe's counsel. Accordingly, the "misrepresentation" of Erbe cannot be considered material where, as here, the patent examiner was presented with all the information relevant to the issuance of the '745 patent and reached an independent decision as to the merits of Erbe's arguments.[7]

### 3. *Attorneys' Fees*

ConMed has moved for an award of attorneys' fees based upon Erbe's inequitable conduct before the USPTO and the district court in the *Canady* litigation. Because, as discussed above, it is held that Erbe did not engage in such conduct, ConMed has failed to demonstrate the requisite "exceptional circumstances," an award

---

6. Although ConMed does point to the omission of the German patent DE 3508784A1, it has failed to demonstrate that the omission of a reference to this patent was material and not cumulative of the prior art (*i.e.*, the patent history in *Canady* ).

7. No opinion is expressed as to the propriety of Erbe's subsequent actions before the district court in the *Canady* litigation.

of attorneys' fees is not appropriate. *See Hycor Corp. v. Schlueter Co.*, 740 F.2d 1529, 1540–41 (Fed.Cir.1984) (because district court erroneously found fraud on the USPTO, award of attorneys' fees was not warranted).

## B. *Infringement by ConMed*

Having determined that ConMed has failed to rebut the presumption of validity of the '745 patent, the issue now becomes whether the ABC probe infringes Erbe's patent (either contributorily or by inducement). In order to resolve this issue, it is necessary to first construe the scope of the '745 patent.

It is well established that the process of claim construction begins with the language of the claim. *See Johnson Worldwide Assocs., Inc. v. Zebco Corp.*, 175 F.3d 985, 989 (Fed.Cir.1999) ("We begin, as with all claim interpretation analyses, with the language of the claims."). In construing a patent claim, a court may also look to the patent specification and the prosecution history. *See Burke, Inc. v. Bruno Indep. Living Aids, Inc.*, 183 F.3d 1334, 1340 (Fed.Cir.1999).

In 'claim construction' the words of the claims are construed independent of

> the accused product, in light of the specification, the prosecution history, and the prior art . . . . The construction of claims is simply a way of elaborating the normally terse claim language [ ] in order to understand and explain, but not to change, the scope of the claims.

*Scripps Clinic v. Genentech, Inc.*, 927 F.2d 1565, 1580 (Fed.Cir.1991) (internal quotation omitted).

■ The patent specification and the prosecution history "constitutes a public record of the patentee's representations concerning the scope and meaning of the claims." *Hockerson–Halberstadt, Inc. v.*

*Avia Group Int'l, Inc.*, 222 F.3d 951, 957 (Fed.Cir.2000). Once an applicant defines or disclaims certain interpretations of its patent during the prosecution history in order to obtain approval, the patentee may be estopped from attempting to later redefine to include the disclaimed or disavowed subject matter. *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co. Ltd.*, 535 U.S. 722, 122 S.Ct. 1831, 1838, 152 L.Ed.2d 944 (2002). Erbe has the burden to show that the CIP application and June 27, 1997, amendment did not limit its patent as argued by ConMed. *See id.* at 1842.

### 1. *Construction of the '745 Patent*

ConMed argues that it does not infringe the '745 patent because the prosecution history demonstrates that Erbe narrowed the scope of its claimed invention to exclude the distinctive characteristics exhibited by the ABC probe—specifically, the use of a laminar flow, flow rates in excess of one liter per minute, and the use of pulsed, high frequency energy. ConMed relies on Erbe's statements and arguments before the patent examiner during the prosecution of the '745 patent to limit the scope of the '745 patent and to thereby demonstrate that its ABC probe does not infringe Erbe's patent. Erbe contests ConMed's interpretation of the statements at issue as "limitations" on the scope of the '745 patent.

ConMed argues that Erbe limited the scope of the '745 patent in two significant respects during the prosecution of that patent. The first alleged limitation is based upon the flow rate or velocity of the Erbe probe. According to ConMed, Erbe sought to distinguish its invention from the *McGreevy* patent by claiming that its probe did not have a sufficient flow rate or flow velocity to clear fluids from the tissue to be coagulated. Instead, ConMed asserts that the Erbe patent disclosed a

probe that "employed a 'low flow rate' of argon gas sufficient only to create an 'inert gas atmosphere,' which Erbe further defined in the specification as a non-directed, non-laminar 'argon cloud.'" (Plaintiffs' Memorandum of Law in Support of Motion for Partial Summary Judgment at 11 (hereinafter "Pl. Mem. at ___.").) According to ConMed, this limitation was expressed both in terms of the rate of flow, and the flow's laminar character, and that Erbe expressly disclaimed the probe's ability to generate a laminar jet of ionized gas. (Pl. Mem. at 21–22 & n. 82.) The second alleged limitation is that the '745 patent is limited to a probe that operates by means of a continuous HF electrical signal.[8]

ConMed argues that the patent prosecution history demonstrates that these limitations by Erbe were necessary in order for the patent examiner to approve its patent application. ConMed notes that both Erbe's original patent application, the '009 application, and the initial submission of the CIP application were rejected on obviousness grounds. ConMed also notes that the invention described in the '009 application had previously been patented by Dr. Canady.

According to ConMed, Erbe sought to distinguish its invention from Dr. Canady's through additional limitations to the scope of its patent. These limitations included addition of the terms "inert gas atmosphere," "non-directed, non-laminar" gas flow, "argon cloud," and "low flow rate of less than about 1 liter/minute." (Pl. Mem. at 20.) ConMed argues further that application of just two of the elements of the '745 patent, as construed, demonstrate that Erbe's infringement claim is unfounded as a matter of law. These elements are (1) the requirement of a "gas stream" that with a flow rate of less than 1 liter/minute, and a non-laminar flow which creates an inert gas atmosphere, and (2) the use of a continuous high frequency energy supply. (*Id.*) ConMed argues that because its probe operates by use of higher flow rates and a laminar stream, as well as by use of a low energy or pulsed HF signal, it does not infringe Erbe's patent. (*Id.*)

As might be expected, Erbe disputes ConMed's characterization of the patent history. According to Erbe, ConMed has misconstrued Erbe's remarks and based its motion on a "skewed reading of the specifications and file history of the '745 patent[.]" (Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion for Partial Summary Judgment and Defendants' Cross–Motion for Summary Judgment at 19 (hereinafter "Def. Mem. at ___.").) Erbe argues that ConMed's attempt to limit the claims of the '745 patent to flow rates of less than 1 liter per minute and to only employ a continuous HF ener-

---

8. ConMed also urges another limitation on the scope of the '745 patent. According to ConMed, the '745 patent is limited to an inert gas flow velocity of 19 km/hour. This limitation is based on Erbe's statement to the patent examiner that a "flow rate of 1 liter per minute leads to a flow velocity of 19[k]m/h," and that "[s]uch velocities in Canady would *certainly* be classified as laminar jets." (Muldoon Decl. Exh. 8 at 10–11.) Because Erbe limited its invention to a probe which produced a nonlaminar, inert gas atmosphere, ConMed argues that it necessarily excluded from its claim any invention which produced a laminar jet (utilizing the formula and method described in its argument). Erbe argues that its invention is not so limited because it is not expressed in any of its claims and because the patent examiner did not rely on such a limitation in approving the CIP application. It is held that ConMed is correct, and that the necessary implication of the foregoing discussion by Erbe was that it also intended to distinguish its invention from the prior art in *Canady* by limiting its invention to flow velocities lower than the 19 km/hour it claimed was described in *Canady*.

gy signal is misplaced and relies on an erroneous view of the record.

According to Erbe, ConMed's proposed construction is contradicted by the plain language of the claims themselves. (Def. Mem. at 20.) Erbe argues that "Independent claim 1 recites a 'low flow rate of less than about 1 liter/minute'," and that "this language means less than 1 liter/minute *and* about 1 liter/minute, not 'less than 1 liter/minute' as suggested by ConMed." (*Id.*) Erbe argues that the proper construction of the patent terms requires only a "non-laminar stream of inert gas"—without the additional limitations urged by ConMed. (Def. Mem. at 21.)

With regard to the claimed limitation on the energy signal, Erbe argues that this limitation is based upon ConMed's misinterpretation of Erbe's analysis of the *Morrison Jr.* patent. Erbe argued before the patent examiner that the device in *Morrison Jr.* "had such a slow flow rate that a continuous HF electrical signal can not be applied," and that, accordingly, only a lower energy signal or pulsed HF signal could be applied. (Def. Mem. at 22.) Erbe argues that ConMed's attempt to read this as a limitation on Erbe's patent ignores the plain meaning of Erbe's argument. Erbe argues that this argument merely distinguished the *Morrison Jr.* patent from the '745 patent by noting that the *Morrison Jr.* invention could not support a continuous HF signal, while Erbe's could. Erbe purports to demonstrate the flaws in ConMed's argument through, inter alia, "studying the physics of current flow in an ionized inert gas". (*Id.*) Erbe argues that ConMed's purported limitation is "contradicted by the plain meaning of the applicant's arguments and the fundamental physics of argon plasma." (*Id.* at 23.)

■ Upon a review of the express language of the '745 patent, the patent history, the supporting affidavits and exhibits

thereto, it is held that ConMed's construction of the '745 patent, as limited by Erbe's representations and arguments before the patent examiner, is correct. It is clear that the patent examiner rejected the initial CIP application as undistinguished from the prior art, based on a construction substantially the same as that now urged by Erbe. It is also clear that the patent examiner only approved the '745 patent after Erbe's representations that differentiated its device from *Canady, Morrison Jr.*, and *Manwaring*.

As noted above, the patent examiner initially rejected the '745 application because it would have been obvious to one of ordinary skill in the art to have provided the Manwaring endoscopic coagulator with an inert gas, such as argon, as the conductive fluid, particularly in view of the teaching of Canady. It would have been further obvious to have provided the Manwaring device, as modified by the teaching of Canady, with a very low flow rate of the inert gas to provide a non-laminar flow pattern to blanket the treatment tissue in view of the teaching of Morrison, Jr [sic] et al.

(Muldoon Decl. Exh. 7 at 6.) It was only after Erbe further limited its CIP application as described by ConMed that the patent examiner approved the '745 patent.

Specifically, Erbe limited its invention to a probe that "avoids the production of laminar jets of ionized gas directed on the tissue" through the use of flow rates lower than those taught in *Canady* (*i.e.*, flow rates from 1 to 12 liters/minute) and flow velocities lower than those resulting from the flow rates in *Canady* (*i.e.*, flow velocities less than 19 km/hour), and which, contrary to the invention in *Morrison Jr.*, operated with "a continuous high frequency energy supply." (Muldoon Decl. Exh. 8 at 10–11.) Because it is held that Erbe so limited its application before the patent

examiner, the issue becomes whether or not ConMed's probe infringes the '745 patent as so construed.

### 2. *Inducement to Infringe and Contributory Infringement By ConMed*

Erbe has argued that ConMed is liable to it on theories of inducement to infringe and contributory infringement. 35 U.S.C. § 271 provides, in relevant part, as follows:

(a) Except as otherwise provided in this title, whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent.

(b) Whoever actively induces infringement of a patent shall be liable as an infringer.

(c) Whoever offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer.

Whether or not a particular patent claim covers an alleged infringer's product is a question of fact. *See Markman v. Westview Instruments Inc.,* 517 U.S. 370, 384, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996). However, where no reasonable jury could conclude that the patent covers the product at issue, summary judgment is appropriate. *See Desper Prods., Inc. v. QSound Labs, Inc.,* 157 F.3d 1325, 1332–33 (Fed. Cir.1998). In the instant case, it is held that no reasonable jury could conclude that

ConMed's ABC probe infringes the '745 patent as construed.

In this case, it is undisputed that the ABC probe does not display the flow characteristics described in the '745 patent. The ABC probe applies ConMed's proprietary ABC technology, "which teaches a directed and substantially directed argon flow" (Pl. Mem. at 28), as opposed to the nonlaminar atmosphere of inert gas described by Erbe's patent. This gas flow exceeds both the 1 liter/minute limitation and the 19 km/hour limitation adopted by Erbe during the prosecution of the '745 patent. Similarly, the ABC probe operates by means of a low frequency or pulsed, high frequency signal (Pl. Mem. at 30), instead of the continuous high frequency signal adopted by Erbe during patent prosecution to distinguish its invention from the prior art in *Morrison.*

As discussed above, because it is undisputed that ConMed does not produce an endoscope (which is the device that is the subject of Erbe's patent), ConMed cannot be liable to Erbe based upon a theory of direct patent infringement and Erbe has withdrawn this claim. Instead, Erbe's claims are based upon claims of contributory patent infringement and inducement to infringe. Neither of these claims is supported by the undisputed evidence in this case.

■ In order to establish a claim of inducement to infringe, the patentee must first show that there has been direct infringement of its patent. If the patentee succeeds in establishing direct infringement, it must then show that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement. *See Minnesota Min. & Mfg. Co. v. Chemque, Inc.,* 303 F.3d 1294, 1304–05 (Fed.Cir.2002). Because, as noted above, ConMed's technolo-

gy does not infringe Erbe's patent (as limited during patent prosecution), Erbe cannot establish a direct infringement of its patent. Accordingly, its inducement to infringe claim must be dismissed.

Erbe's claim of contributory infringement by ConMed must be dismissed for the same reason as its inducement claim. The material elements of contributory infringement are "(1) knowledge that an article is being used as a material element in an infringing product; and (2) a showing that the article being used is not a staple item of commerce with no substantial noninfringing uses." *MacNeill Engineering Co. v. Trisport, Ltd.,* 59 F.Supp.2d 199, 201 (D.Mass.1999) (citation omitted). Because Erbe has failed to identify an infringing product, ConMed cannot be liable on a theory of contributory infringement. As such, it is held that no reasonable jury could find that ConMed infringes (either contributorily or by inducement) the '745 patent.

## V. CONCLUSION

The '745 patent is valid, as ConMed has failed to overcome the presumption of patent validity and has failed to demonstrate inequitable conduct by Erbe that would invalidate its patent. ConMed's ABC probe does not infringe the '745 patent, as limited by Erbe during its prosecution. Therefore, it is hereby

ORDERED that

1. Plaintiff ConMed Corporation's and Aspen Laboratories, Inc.'s, motion for partial summary judgment is GRANTED IN PART and DENIED IN PART as follows:

a. Plaintiffs are GRANTED declaratory judgment in the *First* Cause of Action that the Argon Beam Coagulation ("ABC") Flex Gl Probe does not infringe upon United States Patent No. 5,720,745 ("'745 patent");

b. Plaintiffs are GRANTED judgment for no direct, induced, or contributory infringement of the '745 patent, and the defendants *First, Second,* and *Third* counterclaims are DISMISSED;

c. Plaintiffs are DENIED declaratory judgment that the '745 patent is invalid and unenforceable, and the *Second* and *Third* causes of action are DISMISSED; and

d. Plaintiffs are DENIED an award of attorneys fees.

2. Defendants Erbe Electromedizin GmbH and Erbe USA, Inc.'s cross-motion for partial summary judgment is GRANTED for a declaratory judgment that the '745 patent is valid.

The Clerk is directed to enter judgment accordingly.

IT IS SO ORDERED.