**B & G PLASTICS, INC., Plaintiff,**

v.

**EASTERN CREATIVE INDUSTRIES, INC., Defendant.**

**No. 98 Civ. 0884 (RMB)(JCF).**

United States District Court, S.D. New York.

July 3, 2003.

Complaint ¶ 6, and tortious interference with business relations, *id.* ¶ 16, in connection with the sale of the clip portion of a clip-on tie. *Id.* ¶¶ 5–6. The '014 patent consists essentially of a combination of two unpatented pieces of equipment, namely a metal clip with a hole in the back for clip-on ties and a plastic security hanger from which the ties are hung and displayed in stores. *See* '014 patent (attached to Complaint at Exhibit 1).

On or about January 8, 1999, Defendant moved for summary judgment with respect to Plaintiff's patent infringement claim and Plaintiff's tortious interference claim. On or about January 19, 1999, Plaintiff submitted two cross-motions for summary judgment, i.e., one concerning patent infringement and the other concerning its tortious interference claim. On or about July 22, 1999, Plaintiff also moved for summary judgment with respect to the validity of the '014 patent.

On March 31, 2003, United States Magistrate Judge James C. Francis IV, to whom this matter had been referred, issued a thorough and well-reasoned Report and Recommendation ("Report") recommending that the Court deny Defendant's motion for summary judgment on infringement, grant Defendant's motion for summary judgment on tortious interference, and deny Plaintiff's motions with respect to patent infringement, tortious interference, and patent validity. Report at 471.

The Report advised the parties that "[p]ursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(e) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days to file written objections to this report and recommendation." *Id.* On April 11, 2003, Plaintiff filed objections to the Report ("Plaintiff's Objections"), and on April 14, 2003, Defendant filed objections ("Defendant's Objections").[1]

## *DECISION AND ORDER*

BERMAN, District Judge.

### I. Background

On February 6, 1998, B & G Plastics, Inc. ("Plaintiff") filed a complaint ("Complaint") against Eastern Creative Industries, Inc. ("Defendant") alleging patent infringement of U.S. Patent No. 5,556,014 ("'014 patent") under 35 U.S.C. § 271,

---

1. The Court has also received (three) late filed letters from the parties. *See* 28 U.S.C.

For the reasons set forth below, the Court adopts the Report in its entirety.

## II. Standard of Review

A district court evaluating a magistrate's report may adopt those portions of the report to which no "specific, written objection" is made, as long as those sections are not clearly erroneous. Fed.R.Civ.P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 149, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Greene v. WCI Holdings Corp.*, 956 F.Supp. 509, 513 (S.D.N.Y.1997). "Where a party makes a 'specific written objection' within '[ten] business days after being served with a copy of the [magistrate judge's] recommended disposition,' however, the district court is required to make a de novo determination regarding those parts of the report." *Cespedes v. Coughlin*, 956 F.Supp. 454, 463 (S.D.N.Y.1997) (quoting *United States v. Raddatz*, 447 U.S. 667, 676, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980)). A district judge may accept, reject, or modify, in whole or in part, the findings and recommendations of the magistrate. *See DeLuca v. Lord*, 858 F.Supp. 1330, 1345 (S.D.N.Y.1994); *Walker v. Hood*, 679 F.Supp. 372, 374 (S.D.N.Y.1988).

A motion for summary judgment may be granted only when no genuine issue of material fact remains for trial and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *see also Westnau Land Corp. v. U.S. Small Bus. Admin.*, 1 F.3d 112, 116 (2d Cir.1993). The role of the Court on such a motion "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir.1986) (*citing*

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). The burden of showing the absence of a factual dispute rests on the party seeking summary judgment. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *FDIC v. Giammettei*, 34 F.3d 51, 54 (2d Cir.1994). In assessing the record to determine whether there is a genuine issue of material fact, the Court must resolve all ambiguities and draw all factual inferences in favor of the non-moving party. *See Anderson*, 477 U.S. at 255, 106 S.Ct. 2505; *Thornton v. Syracuse Sav. Bank*, 961 F.2d 1042, 1046 (2d Cir.1992). Summary judgment "is as appropriate in a patent case as in any other." *Avia Group Int'l, Inc. v. L.A. Gear Cal., Inc.*, 853 F.2d 1557, 1561 (Fed.Cir.1988); *see also Spectra Corp. v. Lutz*, 839 F.2d 1579, 1581 n. 6 (Fed.Cir. 1988). When cross-motions for summary judgment are made, the standard is the same as that for individual motions for summary judgment. *See Morales v. Quintel Entm't, Inc.*, 249 F.3d 115, 121 (2d Cir.2001). The Court must consider each motion independently of the other and evaluate the facts in the light most favorable to the non-moving party. *See id.*

## III. Analysis

The facts as set in the Report are incorporated herein by reference.

The Court has conducted a de novo review of the Report, the record, and applicable legal authorities, along with Plaintiff's and Defendant's Objections, and concludes that Magistrate Francis' legal and factual determinations are supported by the record and the law in all respects.

§ 636(b)(1); *see also* Letter from Defendant's counsel, dated June 10, 2003; Letter from Plaintiff's counsel, dated June 23, 2003; and Letter from Defendant's counsel, dated July 1, 2003. Even if the letters were timely, they would not affect the Court's determination. **The Court expects that clients are not billed for counsels' unnecessary and belated efforts.** *See* **Fed.R.Civ.P. 1.**

Neither party's objections provide a legal basis for departing from the Report's recommendations.[2] There are material fact issues on nearly all of the parties' claims which should be presented to the trier of fact.

### A. Patent Validity

■ Magistrate Francis correctly determined that Plaintiff has failed to establish, upon summary judgment, that the '014 patent is valid and that the '014 patent is not "obvious." Report at 463–464 ("[P]laintiff has provided the Court with no evidence, aside from its own assertions, to prove the non-obviousness of the patent."). A patent is not valid if "the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." 35 U.S.C. § 103; *see Monarch Knitting Mach. Corp. v. Sulzer Morat GmbH*, 139 F.3d 877, 881 (Fed.Cir.1998); *see also* 2 Donald S. Chisum, *Chisum on Patents* § 5.01. "Prior art includes any relevant knowledge, acts, descriptions, and patents which pertain to, but predate, the invention in question." *Gittes v. GMIS, Inc.*, 95 Civ. 2296, 1999 WL 500144, at *4 n. 2 (S.D.N.Y. July 15, 1999); *see, e.g., Depaul v. Toshiba Corp.*, 91 Civ. 4481, 1995 WL 489567, at *3 (S.D.N.Y. Aug.15, 1995).

The parties dispute the extent to which prior art made the '014 patent "obvious." *See* Report at 462–463. The Report correctly concludes that summary judgment is inappropriate because "[t]he parties have provided little in the way of evidence" for the Court to make this factual determina-

tion. Report at 463; *see also SIBIA Neurosciences, Inc. v. Cadus Pharm. Corp.*, 225 F.3d 1349, 1356 (Fed.Cir.2000) ("Determining whether there is a suggestion or motivation to modify a prior art reference is … a fact question subsidiary to the ultimate conclusion of obviousness.").

Plaintiff objects to the Report's reliance on the declaration, dated August 16, 1999, of Defendant's president, John Najarian, arguing that it "is not 'evidentiary' and is not properly before the Court." Plaintiff's Objections at 2. The Najarian declaration does not affect the Magistrate's determination that "given the plaintiff's burden in this summary judgment case, coupled with the lack of evidence in support of its contention of non-obviousness, the defendant has offered enough evidence that a triable issue exists as to the validity of the '014 patent." Report at 464; *see also Scanner Techs. Corp. v. Icos Vision Sys.*, 253 F.Supp.2d 624, 640 (S.D.N.Y.2003) ("Questions of fact exist as to what the prior art discloses and how a person of ordinary skill in the art would interpret it in the context of obviousness.").

Plaintiff also argues here that the '014 patent is presumptively valid. *See* Plaintiff's Objections at 4 ("Given the fact that Defendant has offered no admissible evidence on the issue of validity, such presumption of validity is submitted as being confirmed."); *see also* 35 U.S.C.. § 282. A presumption "does not constitute 'evidence' to be weighed against a challenger's evidence." *Avia Group Int'l*, 853 F.2d at 1562; *see also ACS Hosp. Sys., Inc. v. Montefiore Hosp.*, 732 F.2d 1572, 1574–75 (Fed.Cir.1984). Defendant, by presenting evidence of prior art and combination, has met its burden at this stage. *See, e.g.,*

---

**2.** As to any portions of the Report to which no objections have been made, the Court concludes that the Report is not clearly erroneous. *See Pizarro v. Bartlett*, 776 F.Supp. 815, 817 (S.D.N.Y.1991). Also, any objection that is not specifically discussed in this Order has been considered and rejected.

*Kalman v. Berlyn Corp.*, 914 F.2d 1473, 1476 (Fed.Cir.1990) ("The Court ... found that there existed genuine issues of material fact concerning the validity of the '017 patent, and denied Dr. Kalman's summary judgment motion as to the validity of the patent.").

### B. Patent Infringement

■ Magistrate Francis correctly declined to decide either party's infringement motion because "[t]he validity of the '014 patent ... is a threshold consideration for [both] motions." Report at 465; *see also ConMed Corp. v. Erbe Electromedizin GmbH*, 241 F.Supp.2d 187, 191 (N.D.N.Y. 2003) ("The validity of the '745 patent is the threshold consideration on the instant motions. If the '745 patent is not valid, it follows as a matter of law that ConMed's ABC probe cannot infringe on it.").

■ Defendant argues that Magistrate Francis incorrectly determined that "[t]he validity of the '014 patent ... is a threshold consideration," Report at 465, and that the Court may (and should) decide that Defendant has an implied license defense. *See* Defendant's Objections at 2.[3] Assuming, *arguendo*, that the Court were to address this issue prior to determining the validity of the patent, Defendant has failed to establish that there is an implied license. "[F]or the grant of an implied license by virtue of a sale of nonpatented equipment used to practice a patented invention ... the equipment involved must have no noninfringing uses." *See Met–Coil Sys. Corp. v. Korners Unlimited, Inc.*, 803 F.2d 684, 686 (Fed.Cir.1986); *see also Bandag, Inc. v. Bolser's Tire Stores, Inc.*, 750 F.2d 903, 924 (Fed.Cir.1984). The fac-tual record here is incomplete. *See Bandag*, 750 F.2d at 924.

### C. Tortious Interference

Neither party objects to the Report's recommendation that the Court deny Plaintiff's motion for summary judgment as to tortious interference and grant Defendant's tortious interference motion. Report at 471 ("[S]ince there are no disputed issues of fact involved, and the plaintiff is unable to show the alleged tort, I recommend that the defendant's motion for summary judgment on tortious interference be granted."). The Report's recommendations in this matter are certainly not clearly erroneous.

■ To establish tortious interference a plaintiff must "demonstrate that the defendant acted with the sole purpose of harming the plaintiff or, failing that level of malice, used dishonest, unfair, or 'improper means.'" *Matsushita Elects. Corp. v. Loral Corp.*, 974 F.Supp. 345, 354 (S.D.N.Y.1997) (citations omitted). Defendant's threat to commence a lawsuit, which Plaintiff complains about, would be improper only if made in bad faith.[4] *Id.* at 355 n. 16 (citations omitted). Similarly, "acts incidental to protected litigation— acts that are 'reasonably and normally attendant upon protected litigation,' such as sending letters threatening court action— are entitled to immunity to the same extent as the related litigation." *Id.* at 359; *see also Coastal States Mktg., Inc. v. Hunt*, 694 F.2d 1358, 1367 (5th Cir.1983). Magistrate Francis properly found that "the plaintiff has shown no evidence that [Defendant] acted in bad faith," and that

---

3. Plaintiff also seeks to reverse the Magistrate's recommendation as to infringement. *See supra* Section III.A ("Patent Validity").

4. "The Plaintiff's claim rests on a series of communications initiated by [Defendant] re- garding its '539 and '289 patents, which it believed were being infringed." Report at 465.

Defendant's "actions were within its rights." Report at 470.

## IV. Conclusion and Order

For the reasons stated herein and therein, the Court adopts Magistrate Judge Francis' Report [28] in its entirety. The Court grants Defendant's motion for summary judgment as to tortious interference. The Court denies Plaintiff's motions for summary judgment on patent infringement, tortious interference, and the validity of the '014 patent, and denies Defendant's motion for summary judgment on patent infringement.

Counsel are requested to appear at a status/scheduling conference with the Court on July 21, 2003 at 9:30 a.m., in Courtroom 706 of the Thurgood Marshall Courthouse, 40 Centre Street. New York, New York. **The parties are directed to engage in good faith settlement negotiations prior to the conference with the Court.**

## *REPORT AND RECOMMENDATION*

FRANCIS, United States Magistrate Judge.

There are five summary judgment motions pending in this case. The plaintiff, B & G Plastics, Inc. ("B & G"), is seeking summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure on: (1) the validity of U.S. Patent No. 5,556,-014 (" '014 patent"), (2) the defendant's infringement of the '014 patent, and (3) the defendant's tortious interference with the plaintiff's business relations. The defendant, Eastern Creative Industries, Inc. ("Eastern"), cross-moves for summary judgment on two of these issues, arguing (1) that there has been no direct infringement of the '014 patent and (2) that it did not tortiously interfere with the business relations of B & G.

*Background*

The plaintiff and the defendant are both New Jersey corporations engaged in the production and sale of pre-knotted ties. (Complaint ("Compl.") ¶¶ 1, 2). The defendant manufactures necktie knot support clips, but does not manufacture or sell the plastic security hanger that attaches to those clips. (Defendant's Memorandum in Opposition to Plaintiff's Motion for Summary Judgment on Patent Infringement and Theory of Damages ("Def. Memo. on Infringement") at 1, 4). The plaintiff also manufactures plastic belt hangers pursuant to U.S. Patent No. 5,005,741 ('741 patent).

Some of B & G's customers purchase both a hanger and clip from B & G. These customers will then assemble a tie onto the clip, combine the hanger and clip, and sell the completed product to a retail store. (Def. Memo. on Infringement at 3). The retail store in turn sells the completed product to its customers, who must cut the hanger before wearing the tie. (Def. Memo. on Infringement at 3). The clip-on tie the customer ultimately wears is held in place by the necktie knot support clip. (Def. Memo. on Infringement at 3). Prior to B & G's introduction of its security hanger, stores hung clip-on ties from conventional hangers designed to display the unknotted type of necktie. (Declaration of John Najarian dated August 16, 1999 ("Najarian Decl."), attached to Defendant's Memorandum in Opposition to Plaintiff's Motion for Summary Judgment on Patent Validity ("Def. Memo. on Validity"), Exh. E, ¶ 10). These old hangers broke easily when clip-on ties were attached to them. (Najarian Decl., ¶ 10).

### A. *The '014 Patent*

Patent '014 matured from a patent application filed by B & G with the U.S. Patent and Trademark Office on December 29,

1994, and is entitled "Hanger Composite for Display of Neckties with Preformed Knots." (Plaintiff's Memorandum in Support of Plaintiff's Motion for Summary Judgment on Patent Validity ("Pl. Memo. on Validity") at 1). The '014 patent was issued to B & G on September 17, 1996.[1] (Patent Number 5,556,014, attached to Def. Memo. on Validity, Exh. A1). "The [patent application] disclosed and claimed the combination of a first hanger mountable on a display rod and in turn supporting a second hanger hanging a clip for a clip-on tie." (Pl. Memo. on Validity at 1). The plastic security hanger (Appendix A, Reference Number 18) and the necktie knot support clip (Appendix A, Reference Number 32) are assembled by first inserting the security hanger projection (Appendix A, Reference Number 28 ("Diagram 28")) through the lever opening (Appendix A, Reference Number 38B–1), then folding the security hanger along the fold zone (Appendix A, Reference Number 24) and finally forcing the button (Appendix A, Reference Number 28a) through the latching opening (Appendix A, Reference Number 26). Thereafter, the only way to disassemble the hanger and clip is to cut the stem (Appendix A, Reference Number 28b) of the projection (Diagram 28). (Def. Memo. on Infringement at 2–3).

According to the patent itself, the primary object of the invention is "the provision of folding tail hangers for use in hanging neckties with preformed knots. A further object of the invention is the provision of improved folding tail hangers." (Def. Memo. on Validity, Exh. A1). The invention "elongates the projection so as to enable it to function, in addition to securing the fold of the tail, to support an article to be hung from the tail." (Def. Memo. on Validity, Exh. A1). The invention also "disposes a portion of the spring member of a necktie knot support assembly within the fold of the tail, and has the elongated projection supporting the necktie knot support assembly." (Def. Memo. on Validity, Exh. A1). The claims of the patent[2] are a hanger composite including:

(a) a first hanger including a tail having first and second portions folded about a tail fold area to define a tail loop, said first tail portion having a latching opening there through, said second tail portion having a projection extending outward thereof and resident in said latching opening; and (b) a second hanger adapted for hanging neckwear and including a necktie support assembly, said second hanger having a portion thereof disposed retentively within said tail loop, said second hanger having a second portion disposed outwardly of said tail loop, said necktie support assembly comprising a necktie knot former and a metal spring unit.

(Def. Memo. on Validity, Exh. A1).

### B. Events Prior to Issuance of the '014 Patent

According to the plaintiff, the defendant became aware of B & G's intention to alter its tie hanger in 1993, when a salesman from B & G visited John Najarian, East-

---

**1.** Attached to this report are several diagrams of the '014 patent provided by the defendant (Def. Memo. on Infringement) and the plaintiff. (Appendix One, attached to Plaintiff's Memorandum in Support of its Motion for Summary Judgment on Patent Infringement and Theory of Damages) ("Pl. Memo. on Infringement"). The '014 diagrams are marked as Appendix A.

**2.** The term "claims" defines the invention that an applicant believes is patentable. The term represents the portion of the specification that articulates the patent owner's property rights in the invention. Infringement is the act of trespassing upon those rights. Robert L. Harmon, *Patents and the Federal Circuit* (5th Ed.2001), at 298.

ern's President. (Pl. Memo. on Validity at 1; Plaintiff's Moving Statement Pursuant to Civil Rule 56.1 (formerly Rule 3(g)) of the Local Rules of the Southern District in Support of Its Motion for Summary Judgment on Patent Validity ("Pl. Rule 56.1 Validity Stat.") at 3). The salesman asked Mr. Najarian if he would modify the defendant's then solid clip by putting one or more holes in it, to facilitate use with the new B & G hangers that were being developed. (Pl. Memo. on Validity at 1; Pl. Rule 56.1 Validity Stat. at 3 (referring to deposition testimony of John Najarian, dated September 22, 1998)). According to the defendant, Mr. Najarian informed the salesman that it would be too costly and impractical to add a hole to Eastern's existing clips. (Def. Memo. on Validity at 13).

In the summer of 1995, the defendant did modify its clip by adding a hole in the lever of the clip. (Def. Memo on Infringement at 3; Pl. Memo. on Validity at 2). According to the plaintiff, Mr. Najarian took the B & G hanger to his manufacturer in Taiwan, who took measurements and made samples in order that the Eastern clip could be modified to fit with the B & G hanger. (Pl. Memo. on Validity at 2). The defendant claims that this modification was made in response to customer requests, and not as a result of the request of the B & G salesman. (Def. Memo. on Infringement at 3). Eastern began selling its modified clips in November of 1995. (Def. Memo. on Infringement at 4). According to the plaintiff, the defendant's product line now only includes clips suitable for assembly with the B & G hanger. (Pl. Memo. on Validity at 6; Pl. Rule 56.1 Validity Stat. at 20). Although the defendant admits that these are the only clips it currently sells, it maintains that these clips are generic to the industry and are used both by customers who utilize them with B

& G hangers and by customers who do not. (Def. Memo. on Infringement at 6).

The plaintiff claims that prior to the issuance of the patent, it advertised the new "Ready Tie Hanger and Clip" in the 1996 annual Neckwear Association handbook, where the defendant also advertised. (Pl. Memo. on Validity at 2). The advertisements stated "Patents Pending" and bear the date June 1995. (Pl. Memo. on Infringement at 2). It is the plaintiff's contention that the defendant used B & G's advertising documents relating to the new ready-tie hanger to figure out how to assemble Eastern's newly modified clip with the plaintiff's ready-tie hanger. (Pl. Memo. on Infringement at 2).

C. *Events After Issuance of the '014 Patent*

The plaintiff claims that after the issuance of the '014 patent, Mr. Najarian knew that customers purchased the defendant's clips and assembled them with the B & G Ready–Tie Hanger. (Pl. Memo. on Infringement at 2–3). The defendant submits that it did not become aware of the '014 patent until the plaintiff sent a letter on May 30, 1997, charging Eastern with infringement. (Def. Memo. on Infringement at 5). According to the plaintiff, the defendant contacted K–Mart, a prime distributer of clip-on ties, and sought approval for K–Mart's suppliers to use Eastern's clips with the B & G Ready–Tie Hanger. (Pl. Memo. on Infringement at 3). The defendant claims that its only contact with K–Mart regarding the '014 patent was in a letter it sent on September 2, 1997, requesting "suggestion or guidance" from K–Mart regarding B & G's charge of infringement. (Def. Memo. on Infringement at 5–6). The plaintiff asserts that the defendant continued to sell its modified clips with the knowledge that they would be assembled by customers

with a B & G hanger and that this activity directly infringes the '014 patent.

The defendant subsequently invented and patented the "Eastern Hanger" disclosed in U.S. Patent Number 5,505,351 ("'351 patent") dated April 9, 1996, entitled "Hanger for a Pre–Tied Necktie Assembly." (Najarian Decl., ¶ 13 & Exh. A1). Mr. Najarian made a single mold of the '351 patent to test the market. Suppliers indicated to him, however, that retail stores would prefer hangers that could easily be disconnected from the clips. (Najarian Decl., ¶¶ 14–15). In view of the preference for a hanger that can be removed from a clip without the need to cut the hanger, Mr. Najarian invented a new type of hanger. (Najarian Decl., ¶ 15). The new hanger "retains a clip in a manner that prevents the clip-on tie from readily falling off the hanger, yet permits a customer to separate the hanger from the clip without the need to cut the hanger." (Najarian Decl., ¶ 15). Eastern is now attempting to market this new hanger. (Def. Memo. on Validity at 12).

*Summary Judgment*

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Andy Warhol Foundation for the Visual Arts, Inc. v. Federal Insurance Co.,* 189 F.3d 208, 214 (2d Cir.1999); *Tomka v. Seiler Corp.,* 66 F.3d 1295, 1304 (2d Cir.1995). The moving party bears the initial burden of demonstrating "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91

L.Ed.2d 265 (1986). Where the moving party meets that burden, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial," Fed.R.Civ.P. 56(e), by "a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548. "However, where the nonmoving party will bear the burden of proof at trial, Rule 56 permits the moving party to point to an absence of evidence to support an essential element of the nonmoving party's claim." *Bay v. Times Mirror Magazines, Inc.,* 936 F.2d 112, 116 (2d Cir.1991)(citing *Celotex,* 477 U.S. at 325, 106 S.Ct. 2548).

*Patent Validity*

The plaintiff's first motion seeks summary judgment on the validity of the '014 patent. The defendant opposes this motion by claiming that there are material issues of fact in dispute regarding the validity of the '014 patent. Specifically, Eastern claims that the patent is obvious under 35 U.S.C. § 103.

A. *Legal Framework*

Summary judgment is as available in patent cases as in other areas of litigation, and courts may "properly grant, as a matter of law, a motion for summary judgment on patent invalidity when the factual inquiries into obviousness present no genuine issue of material facts." *Ryko Manufacturing Co. v. Nu–Star, Inc.,* 950 F.2d 714, 716 (Fed.Cir.1991).[3] An application for a patent is tested for validity in the Patent and Trademark Office ("PTO"), which examines the factors of "anticipation" under 35 U.S.C. § 102 and "obviousness" under

---

**3.** The Federal Circuit was created by Congress in 1982 and was granted exclusive appellate jurisdiction over cases arising in whole or in part under the patent laws. 2 Donald S. Chisum, *Chisum on Patents* § 5.02[6] (2002).

35 U.S.C. § 103. The patent law, 35 U.S.C. § 282, provides that:

> A patent shall be presumed valid. Each claim of a patent (whether in independent, dependent, or multiple dependent form) shall be presumed valid independently of the validity of other claims; dependent or multiple dependent claims shall be presumed valid even though dependent upon an invalid claim.... The burden of establishing invalidity of a patent or any claim thereof shall rest on the party asserting such invalidity.

See *Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1540–41 (Fed.Cir.1983). The party challenging a patent has the burden of proving a patent's invalidity, and the challenger must show by clear and convincing evidence that the patent is invalid. *See Helifix Ltd. v. Blok–Lok, Ltd.*, 208 F.3d 1339, 1346 (Fed.Cir.2000). "Therefore, though the Defendants certainly do not bear the burden of proving their entire case at this stage in the litigation, they are nevertheless obligated to come forward with evidence that, if credited, could satisfy that heightened standard of proof." *System Management Arts Inc. v. Avesta Technologies, Inc.*, 87 F.Supp.2d 258, 263 (S.D.N.Y.2000); *cf. National Presto Industries, Inc. v. West Bend Co.*, 76 F.3d 1185, 1189 (Fed.Cir.1996)("In deciding a motion for summary judgment of invalidity the burden of proof must be considered.").

### 1. *Anticipation*

Anticipation requires "the disclosure in a single piece of prior art of each and every limitation of a claimed invention." *Apple Computer, Inc. v. Articulate Systems, Inc.*, 234 F.3d 14, 20 (Fed.Cir.2000); *see Electro Medical Systems, S.A. v. Cooper Life Sciences, Inc.*, 34 F.3d 1048, 1052 (Fed.Cir. 1994). The parties agree that the patent in suit is not anticipated under 35 U.S.C. § 102. Rather, the defendant claims that "the determination of whether the claimed device is unpatentable is whether it would have been obvious for one of ordinary skill in the art to combine the teachings of the prior art references to produce the claimed invention." (Def. Memo. on Validity at 6). Therefore, the patent is being challenged only on grounds of obviousness.

### 2. *Obviousness*

To obtain a patent, "an invention must not have been obvious to one with ordinary skill in the art to which the subject matter of the invention pertains at the time of the invention and in the light of the teachings of the prior art." Chisum, *supra*, § 5.01; *see* 35 U.S.C. § 103(a); *see also Monarch Knitting Machinery Corp. v. Sulzer Morat GmbH*, 139 F.3d 877, 881 (Fed.Cir.1998). This requirement is distinct from the novelty or anticipation condition discussed previously in that "an invention may be obvious even though it is not identically disclosed anywhere in the prior art." Chisum, *supra*, § 5.01. This principle recognizes that new problems arise and allows a new patent "only for those literally new solutions that are beyond the grasp of the ordinary artisan who had a full understanding of the pertinent prior art." *Id.* Section 103 provides that strict novelty is not always required to support a patent:

> A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

35 U.S.C. § 103(a).

Obviousness is ultimately a determination of law based on underlying determina-

tions of fact. *Graham v. John Deere Co.,* 383 U.S. 1, 17–18, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966); *Richardson–Vicks Inc. v. Upjohn Co.,* 122 F.3d 1476, 1479 (Fed.Cir. 1997); *Panduit Corp. v. Dennison Manufacturing Co.,* 810 F.2d 1561, 1566–68 (Fed.Cir.1987). These underlying factual determinations (the *"Graham* inquiries") include: (1) the scope and content of the prior art; (2) the level of ordinary skill in the art; (3) the differences between the claimed invention and the prior art; and (4) the extent of any proffered objective indicia of non-obviousness. *See Graham,* 383 U.S. at 17–18, 86 S.Ct. 684.

To determine summary judgment based on obviousness, it must first be determined whether the *Graham* inquiries raise any disputes about material facts. *Monarch Knitting Machinery Corp.,* 139 F.3d at 881. "If facts remain in dispute, [the] court weighs the materiality of the dispute, i.e. whether resolution of the dispute one way or the other makes a difference to the final determination of obviousness." *Id.* If the facts are found to be material to the ultimate finding of obviousness, summary judgment is not appropriate.

Where the legal conclusion of obviousness is disputed, but the underlying facts are not, there is no issue of fact requiring a trial and summary judgment is appropriate. *See Newell Cos. v. Kenney Manufacturing Co.,* 864 F.2d 757, 763 (Fed.Cir. 1988) (citations omitted). In addition, summary judgment on the basis of obviousness may be granted to invalidate patent claims when the subject matter of the invention and the prior art are so readily understandable as to eliminate any genuine issue of fact. *See Union Carbide Corp. v. American Can Co.,* 724 F.2d 1567, 1573 (Fed.Cir.1984).

### B. *Discussion*

The parties agree that Mr. Najarian represents the level of ordinary skill in the art involved in the '014 patent. (Pl. Memo. on Validity at 3; Def. Memo. on Validity at 7). Therefore, the only remaining factual determination is whether the prior art fully disclosed the '014 patent.

Courts use two criteria to determine whether prior art is relevant for the purposes of the obviousness analysis: "(1) whether the art is from the same field of endeavor ..., and (2) if the reference is not within the field of the inventor's endeavor, whether the reference still is reasonably pertinent to the particular problem with which the inventor is involved." *In re Clay,* 966 F.2d 656, 658–59 (Fed.Cir. 1992). With respect to the second criterion, "[a] reference is reasonably pertinent if ... it is one which, because of the matter with which it deals, logically would have commended itself to an inventor's attention in considering his problem." *Id.* at 659. Making this determination requires the court to examine the purposes of both the invention and the prior art. *See id.*

#### 1. *Scope and Content of the Prior Art*

The parties are in agreement that U.S. Patent No. 3,336,601, assigned to Harry Kanter ("Kanter '601 patent") and U.S. Patent No. 3,365,726, assigned to Sidney C. Pulitzer ("Pulitzer '726 patent") are relevant prior art in this case. The defendant claims that U.S. Patent 5,005,741, assigned to Chester Kolton ("Kolton '741 patent") should also be considered as prior art to the '014 patent. (Pl. Memo. on Validity at 13; Def. Memo. on Validity at 2). Although in its initial submission the plaintiff only identified patents '601 and '726 as relevant prior art, in its response to the defendant's reply memorandum, the plaintiff accepted the Kolton '741 patent as prior art. (Plaintiff's Reply to Defendant's Memorandum in Opposition to

Plaintiff's Motion for Summary Judgment on Patent Validity ("Pl. Reply Memo. on Validity") at 5). The plaintiff maintains, however, that although the differences between the claimed invention and the prior art are disputed between the parties, it is not a dispute over material issues of fact and summary judgment is still appropriate. (Pl. Reply Memo. on Validity at 5).

### a. *Kanter '601 Patent*

The defendant maintains that the Kanter '601 patent discloses "a neck-tie knot support assembly (clip) substantially similar to that shown in the B & G '014 patent-in-suit." (Def. Memo. on Validity at 2). Specifically,

> [T]he Kanter '601 patent shows a metal clip portion 16 that is similar to clip 36 of the B & G '014 patent. Most importantly, the Kanter '601 patent discloses in Fig. 4 an opening in moveable member 37 of the metal clip 16, and such opening corresponds to opening 38b–1 of movable member 38 shown in Fig. 7 of the B & G '014 patent. Thus, the Kanter '601 patent discloses the clip that is disclosed and claimed as the "second hanger" in the B & G '014 patent-in-suit.

(Def. Memo. on Validity at 2).

The plaintiff disagrees with this interpretation of the Kanter '601 patent, claiming that while "[t]he function of opening 38b–1 of the '014 patent is to permit the tail projection to engage the clip to hang the second hanger from the first hanger," no function "is disclosed in the Kanter patent for the 'opening in the movable member 37.'" (Pl. Reply Memo. on Validity at 6–7). The plaintiff thus does not agree that the Kanter clip functions as a "second hanger." (Pl. Reply Memo. on Validity at 7).

### b. *Pulitzer '726 Patent*

The defendant argues that the Pulitzer '726 patent also discloses a neck-tie support assembly clip similar to the '014 patent and discloses the clip that is claimed as the "second hanger" in the B & G patent. (Def. Memo. on Validity at 2–3). The plaintiff disagrees and contends that the Pulitzer patent is distinct from the patent-in-suit. (Pl. Reply Memo. on Validity at 7).

### c. *Kolton '741 Patent*

The defendant identifies the Kolton '741 patent, a belt hanger design, as showing similarities with the "first hanger" in the '014 patent. "The Kolton '741 hanger includes every feature of the B & G '014 patent hanger except for the tail end recess 30 shown in Fig. 1 of the B & G '014 patent." (Def. Memo. on Validity at 3). The defendant claims that the suggestions of the Kolton '741 patent motivated use of "the plastic hanger disclosed therein with one of the prior art clips disclosed in the Kanter '601 or Pulitzer '726 patents. That motivation arises from the disclosure of the Kolton '741 patent that the plastic hanger can be used for garments and not just belts." (Def. Memo. on Validity at 8). The defendant maintains that the combination of the prior art and the Kolton '741 suggestions made the '014 patent obvious.

The plaintiff asserts that since the Kolton '741 patent does not hang items by the use of its folding tail projection, but rather rests the belt frame upon the fold line of the foldable tail, it provides no suggestion that would lead one of ordinary skill to combine it with the second hangers of the Kanter and Pulitzer patents. (Pl. Reply Memo. on Validity at 9).

> In reply, Mr. Najarian claims that:
> It would have been obvious for me to have attempted to connect the belt hanger disclosed in the Kolton '741 patent

to the clip for the pre-formed clip-on tie shown in either the Kanter '601 or Pulitzer '726 patents. It would have been obvious to use the opening shown in the lever of either of these two patents to accept the locking member of the plastic hanger shown in the Kolton '741 patent. The result would provide for the clip-on tie the same security as the Kolton '741 patent teaches for a belt. That is, the opening in the lever of either the Kanter '601 or Pulitzer '726 clips would be used in the same fashion as in the opening on a belt buckle.

(Najarian Decl., ¶ 7).

Thus, although the scope of the relevant prior art seems to be agreed upon by the parties, they dispute the materiality of the differences between the prior art and the '014 patent.

### 2. *Differences between Claimed Invention and Prior Art*

It is clear that no one piece of prior art fully disclosed all elements of the '014 patent. The Kanter '601 patent and the Pulitzer '726 patent may have provided disclosure of the second hanger, but they do not use the openings in the levers of the clips for use in hanging or displaying tie clips. Mr. Najarian testified that the purpose of those openings was likely for either aesthetic reasons or to minimize contact between the metal piece and the skin of the wearer. (Def. Memo. on Validity at 8). Similarly, while the '741 patent may suggest connecting the clip to the plastic hanger (Def. Memo. on Validity at 7), it does not disclose all elements of the '014 hangers, and is intended for use with a different product.

Eastern therefore bases its obviousness contentions on a combination of the teachings of the three prior art references discussed above. A combination of prior art references can be used to suggest the in-

ventor's result. *See In re Sheckler,* 58 C.C.P.A. 936, 438 F.2d 999, 1000–01 (Cust. &Pat.App.1971). It is not necessary that the prior art suggest expressly or implicitly all the "changes or possible improvements" the inventor made. *Id.* However, it is necessary that the inventor apply "knowledge clearly present in the prior art." *Id.* "When an obviousness determination is based on multiple prior art references, there must be a showing of some teaching, suggestion, or reason to combine the references." *Winner International Royalty Corp. v. Wang,* 202 F.3d 1340, 1348 (Fed.Cir.2000) (citations and internal quotation marks omitted); *see also Arkie Lures, Inc. v. Gene Larew Tackle, Inc.,* 119 F.3d 953, 957–58 (Fed.Cir.1997) ("It is insufficient to establish obviousness that the separate elements of the invention existed in the prior art, absent some teaching ... to combine the elements."). To evaluate a claim of obviousness predicated upon a combination of prior art references, a court must take the "critical step of casting [its] mind back to the time of invention, to consider the thinking of one of ordinary skill in the art, guided only by the prior art references and the then-accepted wisdom in the field." *In re Dembiczak,* 175 F.3d 994, 999 (Fed.Cir.1999). "The absence of ... a suggestion to combine is dispositive in an obviousness determination." *Gambro Lundia AB v. Baxter Healthcare Corp.,* 110 F.3d 1573, 1579 (Fed.Cir.1997).

### 3. *Remaining Issues of Fact*

The parties dispute the extent to which the prior art could have suggested its combination to create the '014 patent. (Pl. Reply Memo. on Validity at 9; Def. Memo. on Validity at 8). That determination, whether there is a suggestion or motivation to modify a prior art reference, is a question of fact to be decided prior to the

ultimate conclusion of obviousness. *SIBIA Neurosciences, Inc. v. Cadus Pharmaceutical Corp.*, 225 F.3d 1349, 1356 (Fed.Cir. 2000); *Tec Air, Inc. v. Denso Manufacturing Michigan, Inc.*, 192 F.3d 1353, 1359 (Fed.Cir.1999)(holding that factual underpinnings of obviousness include whether reference provides motivation to combine its teachings with those of another reference). It must therefore be determined if the factual dispute about whether the combination of all of the prior art would teach one of ordinary skill in this art to use the hangers disclosed in the Kolton '741 patent with the clips disclosed in the Kanter '601 or Pulitzer '726 patents is a material issue of fact appropriate for a jury.

A court may find the "reason, suggestion, or motivation" to combine either implicitly or explicitly: "(1) in the prior art references themselves; (2) in the knowledge of those of ordinary skill in the art that certain references, or disclosures in those references, are of special interest or importance in the field; or (3) from the nature of the problem to be solved, leading inventors to look to references relating to possible solutions to that problem." *Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 665 (Fed. Cir.2000) (citations and internal quotation marks omitted).

It is not clear whether the prior art disclosed the '014 patent. The parties have provided little in the way of evidence for the Court to use in making the necessary *Graham* determinations. "Although patent issues are as amenable to summary resolution as other matters, when material facts are disputed, and testimonial, documentary, and expert evidence are needed for their resolution, summary adjudication is not indicated." *Quad Environmental Technologies Corp. v. Union Sanitary District*, 946 F.2d 870, 872 (Fed.Cir.1991). The only expert testimony provided is a declaration of Mr. Najarian offered by the defendant. To create a genuine issue of fact, the nonmovant must do more than present some evidence on an issue it asserts is disputed.

> [T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence [of the nonmovant] is merely colorable, or is not significantly probative, summary judgment may be granted.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (citations omitted); *see also Celotex* 477 U.S. at 322–23, 106 S.Ct. 2548. Thus, the defendant here must do more than merely raise some doubt as to whether the patent is valid; evidence must be provided which "would be sufficient to require submission to the jury of the dispute over the fact." *Avia Group International, Inc. v. L.A. Gear California, Inc.*, 853 F.2d 1557, 1560 (Fed.Cir.1988).

On the other hand, the plaintiff, as the movant, still bears the burden of demonstrating the absence of all genuine issues of material fact. Although a party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact," there is no requirement that the moving party submit affidavits or expert testimony. *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 56(c)).

While the prior art may not disclose the claims of the '014 patent, the plaintiff has provided the Court with no evidence, aside from its own assertions, to prove the nonobviousness of the patent. Although the defendant's evidence is by no means overwhelming, Eastern has presented at least

one plausible explanation of how one with ordinary skill in the art could find the invention obvious. Where there appears to be a genuine evidentiary conflict over an underlying material fact, the grant of summary judgment is inappropriate. *See, e.g., Finish Engineering Co. v. Zerpa Industries, Inc.,* 806 F.2d 1041, 1044 (Fed.Cir. 1986). "[A]t times the issues may be such that only after the agony of a full-blown trial may it authoritatively be determined that there was never really the decisive issue of fact at all." *Robbins v. Milner Enterprises, Inc.,* 278 F.2d 492, 497 (5th Cir.1960).

Recognizing the presumption of validity given to patents, it is certainly reasonable that after being presented with more evidence regarding the disclosures of the prior art, a finder of fact would confirm the validity of the patent. However, given the plaintiff's burden in this summary judgment case coupled with the lack of evidence provided by the plaintiff in support of its contention of non-obviousness, the defendant has offered enough evidence that a triable issue exists as to the validity of the '014 patent. I therefore recommend that the plaintiff's motion for summary judgment on patent validity be denied.

*Patent Infringement*

The plaintiff next seeks summary judgment on the defendant's infringement of the '014 patent within the meaning of 35 U.S.C. § 271(b). The defendant has cross-moved for summary judgment on the ground that there has been no direct infringement of the '014 patent because of the existence of an implied license. Because they concern the same subject matter, both motions will be discussed together.

The plaintiff claims that any assembly of the defendant's clips with the plaintiff's hanger, by the defendant or by its customers, is a direct and literal infringement of claim 1 of the '014 patent. (Pl. Memo. on Infringement at 12). The plaintiff also argues that by continuing to sell its modified clip to customers, with knowledge that the clip would be assembled with B & G's patented hanger, the defendant induced its customers to infringe the '014 patent. (Pl. Memo. on Infringement at 12). The defendant defends against the plaintiff's motion by asserting that there are genuine issues of material fact and insufficient evidence regarding whether Eastern's conduct constituted "inducement." (Def. Memo. on Infringement at 1). The defendant counters the plaintiff's motion and supports its own by asserting that B & G customers are granted an implied license upon purchasing the B & G hanger to combine the hanger with any clip of their choice. (Defendant's Memorandum in Support of its Motion for Summary Judgment of No Patent Infringement ("Def. Memo. on No Infringement") at 11; Def. Memo. on Infringement at 1).

### A. *Legal Framework*

Direct infringement of a patent is defined by 35 U.S.C. § 271(a), which provides that:

Except as otherwise provided in this title, whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent.

The determination of infringement is a two-step process. First, the court construes the claims to correctly determine their scope. Second, the court must determine whether the claims as properly interpreted cover the accused device or process. *See Lockheed Martin Corp. v. Space Systems/Loral, Inc.,* 249 F.3d 1314, 1323 (Fed. Cir.2001); *Becton Dickinson & Co. v. C.R. Bard, Inc.,* 922 F.2d 792, 796 (Fed.Cir.

1990); *Hormone Research Foundation, Inc. v. Genentech, Inc.*, 904 F.2d 1558, 1562 (Fed.Cir.1990). The first part of the process is a legal question and the second is factual. *See Hormone Research Foundation, Inc.*, 904 F.2d at 1562. Because of the factual nature of the infringement inquiry, the Federal Circuit has cautioned that a summary judgment motion on infringement must be approached cautiously. *See SRI International v. Matsushita Electric Corp.*, 775 F.2d 1107, 1116 (Fed.Cir. 1985) ("Because ... infringement is itself a fact issue, a district court must approach a motion for summary judgment of infringement or non-infringement with a care proportioned to the likelihood of its being inappropriate."). The burden is on the patent holder to show infringement by a preponderance of the evidence. *See Kegel Co. v. AMF Bowling, Inc.*, 127 F.3d 1420, 1425 (Fed.Cir.1997).

A claim of active inducement under 35 U.S.C. § 271(b) requires the plaintiff to prove that the accused infringer knowingly aided and abetted another's direct infringement of the patent. *See Rodime PLC v. Seagate Technology, Inc.*, 174 F.3d 1294, 1306 (Fed.Cir.1999). "[P]roof of actual intent to cause the acts which constitute the infringement is a necessary prerequisite to finding active inducement." *Hewlett–Packard Co. v. Bausch & Lomb Inc.*, 909 F.2d 1464, 1469 (Fed.Cir.1990). "It must be established that the defendant possessed specific intent to encourage another's infringement and not merely that the defendant had knowledge of the acts

alleged to constitute inducement." *Manville Sales Corp. v. Paramount Systems, Inc.*, 917 F.2d 544, 553 (Fed.Cir.1990). The plaintiff must demonstrate that the alleged infringer induced the infringing acts and that "he knew or should have known his actions would induce actual infringements." *Id.*

### B. *Summary Judgment*

The validity of the '014 patent, as discussed previously, is a threshold consideration for the instant motions. If the '014 patent is not valid, it follows as a matter of law that Eastern's use of its own clip with B & G's hanger does not infringe it.[4] Accordingly, it is not appropriate to decide the motions for summary judgment on infringement before the issue of validity is resolved. Since I have recommended that summary judgment be denied on the issue of patent validity, I similarly recommend that it be denied on both the plaintiff's and the defendant's motions.

### *Tortious Interference*

The final set of motions relate to a different set of patents altogether. The defendant owns two patents, U.S. Patent No. 4,337,539 ("'539 patent") and U.S. Design Patent Des. 267,289 ("'289 patent"), which are the subject matter of the tortious interference claims. Since they concern the same set of occurrences, the plaintiff's motion for summary judgment on tortious interference with business relations and the defendant's corresponding motion seeking a determination that there has

---

**4.** Similarly, even if the '014 patent is found to be valid, it does not necessarily follow that the defendant's conduct constituted infringement. For example, the defendant argues that even if the '014 patent is valid, customers were granted an implied license to use the '014 hangers with a clip sold by another company. (Def. Memo. on Infringement at 10–12). Given this implied license, the defendant argues

that there is no direct infringement and therefore no induced infringement as well. (Def. Memo. on Infringement at 12). It would be an inefficient use of the Court's resources to examine this claim on its merits at this stage in the litigation. The infringement claim and the various defenses should be considered after the validity claim is determined.

been no tortious interference will be discussed together.

### A. *Background*

The facts behind these motions are generally agreed upon by the parties. The plaintiff's claim rests on a series of communications initiated by Eastern regarding its '539 and '289 patents, which it believed were being infringed. Eastern's president, John Najarian, is the patentee and owner of the '539 and '289 patents. The '539 patent was issued on July 6, 1982, and is entitled "Necktie Knot Support Assembly." (Defendant's Statement of Material Facts Pursuant to Civil Rule 56.1 of the Local Rules of the Southern District (Formerly Rule 3(g)) in Support of Defendant's Motion for Summary Judgment of No Tortious Interference ("Def. Rule 56.1 Interference Stat."), Exh. A, Najarian Patent at EC 0000069).[5] The '289 patent was issued on December 21, 1982, and as a design patent, it had a 14 year term, expiring on December 21, 1996. (Defendant's Memorandum in Support of its Motion for Summary Judgment of No Tortious Interference with Business Relations ("Def. Memo. on No Interference") at 2; Def. Rule 56.1 Interference Stat., Exh. A, Najarian Patent at EC 0000076).[6]

In March, 1995, the defendant came to believe that B & G was manufacturing and selling a neck-tie support clip which Eastern felt infringed its '289 and '539 patents. (Def. Memo. on No Interference at 2; Def. Rule 56.1 Interference Stat., Exh. A at 0000026). Eastern sought advice of patent counsel as to whether B & G's clip did infringe upon the '539 and '289 patents. The counsel informed Eastern that there was infringement on both of the patents, and by letter dated March 29, 1995 ("the March letter"), informed B & G that its clip "appears to be substantially identical" to the clip covered by the '539 and '289 patents. (Def. Memo. on No Interference at 2; Plaintiff's Memorandum in Support of its Motion for Summary Judgment on Tortious Interference with Business Relations ("Pl. Memo. on Interference") at 2; Def. Rule 56.1 Interference Stat., Exh. A at EC 0000026). The letter further stated that if B & G continued to make or sell the infringing article, it and others involved "will all be named as party defendants." (Def. Rule 56.1 Interference Stat., Exh. A at EC 0000026). The defendant provided a copy of this letter to Steinberg Neckwear, a customer common to B & G and Eastern, on April 3, 1995. (Def. Memo. on No Interference at 2; Pl. Memo on Interference at 2; Def. Rule 56.1 Interference Stat., Exh. A at 0000091).[7] The plaintiff claims that the charges made in the March letter were made in bad faith because the '289 patent was invalid, and because B & G's business relationship with Steinberg Neckwear was compromised when Eastern shared a copy of the infringement letter with them. (Pl. Memo. on Interference at 7).[8]

---

**5.** There are no page numbers on the documents in Exhibit A, but documents are referenced by their title and bates stamp number where available.

**6.** A design patent may be granted for a term of 14 years for any "new, original and ornamental design for an article of manufacture." 35 U.S.C. § 171. A design patent protects the nonfunctional aspects of an ornamental design as shown in a patent. *Elmer v. ICC Fabricating, Inc.*, 67 F.3d 1571, 1577 (Fed. Cir.1995) (citation omitted).

**7.** The defendant claims that Joseph Steinberg, the owner of Steinberg Neckwear, has been a close friend of John Najarian for thirty years. (Def. Memo. on No Interference at 3).

**8.** The defendant claims that Steinberg Neckwear continued to purchase B & G clips, even after receiving the April 3, 1995 letter. (Def. Memo. on No Interference at 4).

In response to Eastern's letter, B & G sought opinion of its own patent counsel, and was informed that the B & G clip did not infringe either patent, and furthermore that the '289 patent was invalid and therefore B & G was unable to infringe it. (Pl. Memo. on Interference at 2). B & G's counsel then shared this information with Eastern's attorney by letter on April 11, 1995. (Def. Memo. on No Interference at 3; Def. Rule 56.1 Interference Stat., Exh. A at EC 0000033). Despite the opinion of its counsel that there was no infringement, B & G decided to issue a "hold harmless" letter to its customers on April 13, 1995 ("the hold harmless letter"). This letter informed customers that B & G would take responsibility for paying "any and all monetary damages" that could potentially arise if a judgment were entered against B & G "for infringement of [patents '539 and/or '289]." (Def. Memo. on No Interference at 3; Pl. Memo. on Interference at 3; Def. Rule 56.1 Interference Stat., Exh. A at 000003). The plaintiff claims that its business relationship with all of its customers was damaged by having to issue the hold harmless letter. (Pl. Memo. on Interference at 12). After receiving the opinion of B & G's counsel, Eastern obtained a second patent counsel, who advised it that B & G's clips did not likely infringe on Eastern's patents. (Def. Memo. on No Interference at 3). After hearing this, Eastern stopped pursuing an infringement claim against B & G. Eastern claims that it also advised Joseph Steinberg of Steinberg Neckwear that it would not be bringing any infringement action against B & G. (Def. Memo. on No Interference at 3).

Although it was satisfied that B & G's clips did not infringe its patents, Eastern still believed that other companies were infringing. Eastern therefore sent out a letter to all of its customers on June 16, 1995 ("the June letter"), stating that "[i]t is our understanding that one or more companies are selling pretied neckties having a knot support assembly which copies and infringes on the patented knot support assembly of the above ['539] patent." (Def. Memo. on No Interference at 3–4; Pl. Memo. on Interference at 3–4; Def. Rule 56.1 Interference Stat., Exh. A at EC 0000047). The letter went on to state that Eastern was "aware of another pre-tied necktie available in the market-place having a different knot support assembly which does not infringe on the ['539] patent." (Def. Rule 56.1 Interference Stat., Exh. A at EC 0000047). According to Eastern, this last paragraph was included to "cover[ ] the units sold by B & G Plastics and reduce[ ] the likelihood of a claim being asserted against you by B & G that your notice letter implies that all third-party units infringe on your patent." (Def. Rule 56.1 Interference Stat., Exh. A at EC 0000131).[9] The plaintiff asserts that after receiving this letter from Eastern, customers would assume that the infringing goods were made by B & G, because of the "hold harmless" letter B & G had issued to all its customers earlier. (Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment of No Tortious Interference with Business Relations ("Pl. Memo. on No Interference") at 8). The plaintiff claims that because Eastern knew at this point that B & G's goods were not infringing, it was bad faith for them not to specifically mention that fact in the June letter. (Pl. Memo. on No Interference at 8).

9. Although it took no action against B & G, Eastern did eventually commence lawsuits against two companies, Bolero U.S.A. Inc. and Exquisite Apparel Corp. that were in-fringing the '539 patent. Those suits were both settled. (Def. Memo. on No Interference at 4).

### B. *Legal Framework*

Under New York tort law, the elements of a claim for tortious interference with business relations are: (1) a plaintiff's business relationship with a third party; (2) the defendant's interference with that business relationship; (3) a showing that the defendant acted with the sole purpose of harming the plaintiff or used dishonest, unfair, or improper means; and (4) injury to the relationship. *Lombard v. Booz–Allen & Hamilton, Inc.*, 280 F.3d 209, 214 (2d Cir.2002); *Purgess v. Sharrock*, 33 F.3d 134, 141 (2d Cir.1994); *Burba v. Rochester Gas & Electric Corp.*, 139 A.D.2d 939, 939, 528 N.Y.S.2d 241, 242 (4th Dep't 1988). In this case, the defendant claims that the plaintiff is unable to satisfy the third and fourth prongs of the standard—that Eastern used improper means or bad faith, and that B & G was ultimately injured by any of Eastern's actions.

### C. *Discussion*

#### 1. *Bad Faith*

To satisfy the third requirement, a plaintiff must demonstrate "that the action complained of was motivated solely by malice or to inflict injury by unlawful means rather than by self-interest or other economic considerations." *Kramer v. Pollock–Krasner Foundation*, 890 F.Supp. 250, 258 (S.D.N.Y.1995). Threatening to commence a lawsuit constitutes improper means "only if brought in bad faith." *Matsushita Electronics Corp. v. Loral Corp.*, 974 F.Supp. 345, 355 n. 16 (S.D.N.Y. 1997) (citations omitted). The plaintiff makes several assertions of how Eastern acted in bad faith.

#### a. *Invalidity of '289 patent*

First, B & G claims that the '289 patent was invalid and that because Eastern was or should have been aware of this fact, it acted with bad faith by threatening to institute a lawsuit in the March letter. (Pl. Memo. on Interference at 8–10).

To reach the level of bad faith, a threatened lawsuit "must be objectively baseless so that no reasonable litigant could reasonably expect success on the merits. If an objective litigant could conclude that a lawsuit is reasonably calculated to obtain a favorable outcome, the suit is immunized." *Matsushita Electronics Corp.*, 974 F.Supp. at 355 (quoting *Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.*, 508 U.S. 49, 60, 113 S.Ct. 1920, 123 L.Ed.2d 611 (1993)). To make this determination, this Court must look to federal patent law to provide guidance on whether Eastern was reasonable in its belief of the validity of its patent, and whether the March letter to B & G was an appropriate way for Eastern to protect its rights as a patent holder. *See Mikohn Gaming Corp. v. Acres Gaming, Inc.*, 165 F.3d 891, 896 (Fed.Cir.1998) ("To the extent that conflict arises in the interaction between state commercial law and federal patent law, federal law must be applied"); *Hunter Douglas, Inc. v. Harmonic Design*, 153 F.3d 1318, 1321 (Fed.Cir.1998) (holding that the application of an element of a state law tort is preempted if, "in holding a defendant liable for the conduct . . . there would be conflict with federal patent law"), *overruled in non-pertinent part by Midwest Industries, Inc. v. Karavan Trailers, Inc.*, 175 F.3d 1356 (Fed.Cir. 1999).

Federal patent law holds that "any patent owner has the right to . . . enforce its patent, and that includes threatening alleged infringers with suit." *Concrete Unlimited, Inc. v. Cementcraft, Inc.*, 776 F.2d 1537, 1539 (Fed.Cir.1985). In *Mikohn Gaming Corp.*, the Federal Circuit articulated a federal standard applicable to all torts, state or federal, based on a patentee's statement about patent infringement

to a potential infringer and the industry. The court held that:

[C]ommunication to possible infringers concerning patent rights is not improper if the patent holder has a good faith belief in the accuracy of the communication. Although "bad faith" may encompass subjective as well as objective considerations, and the patent holder's notice is not irrelevant to a determination of bad faith, a competitive commercial purpose is not of itself improper, and bad faith is not supported when the information is objectively accurate. In general, a threshold showing of incorrectness or falsity, or disregard for either, is required in order to find bad faith in the communication of information about the existence or pendency of patent rights. Indeed, a patentee, acting in good faith on its belief as to the nature and scope of its rights, is fully permitted to press those rights even though he may misconceive what those rights are.

165 F.3d at 897 (citation and internal quotation marks omitted). Moreover, in *C.R. Bard Inc. v. M3 Systems, Inc.*, 157 F.3d 1340 (Fed.Cir.1998), the court found that "[t]he law recognizes a presumption that the assertion of a duly granted patent is made in good faith; this presumption is overcome only by affirmative evidence of bad faith." *Id.* at 1369 (internal citations omitted).

Consequently, patentees do not violate the rules of fair competition by making accurate representations, and they are not liable for making representations that turn out to be inaccurate provided they make them in good faith. *See Mallinckrodt, Inc. v. Medipart, Inc.*, 976 F.2d 700, 710 (Fed. Cir.1992). Nevertheless, if the party challenging such statements under state or federal law presents clear and convincing evidence that the infringement allegations are objectively false, and that the patentee made them in bad faith, with knowledge or disregard for their incorrectness or falsity, the statements are actionable and are not protected by the existence of a patent. *Id.* To survive summary judgment, the party challenging such statements must present affirmative evidence sufficient for a reasonable jury to conclude that the patentee acted in bad faith, in light of the burden of clear and convincing evidence that will govern at trial. To show that Eastern acted in bad faith, B & G must therefore offer clear and convincing evidence that Eastern had no reasonable basis to believe that the its patents were being infringed when the various infringement letters were sent.

B & G claims that Eastern's charge of infringement was made in bad faith since it involved an invalid patent. B & G asserts that the '289 patent was invalid because the patentability of a design cannot be based on elements that are concealed, and the clip covered by the '289 patent is not visible when the clip is assembled with a tie. (Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment of No Tortious Interference with Business Relations ("Pl. Opp. Memo. on No Interference") at 7–8). Regardless of whether the '289 patent was valid or invalid, a patent owner is fully able to attempt to protect his legal rights, however, even if it later turns out that he was mistaken in his perception of those rights. *See Mallinckrodt, Inc.*, 976 F.2d at 710; *Kaplan v. Helenhart Novelty Corp.*, 182 F.2d 311, 314 (2d Cir.1950). Moreover, given the general presumption of validity a patent enjoys under 35 U.S.C. § 282, Eastern was well justified in assuming the validity of its patent and thus attempting to enforce it. The defendant went so far as to consult with patent counsel before issuing the March letter. While acting on advice of counsel is not dispositive of good

faith, it certainly bolsters Eastern's claimed good faith belief in the validity of the '289 patent. When Eastern's second patent counsel advised it that the B & G goods might not be infringing, Eastern took no further action toward B & G. Although one can certainly agree with the plaintiff that it would have been appropriate to inform B & G that its goods were no longer considered to be infringing, that failure does not, by itself, support a finding of tortious interference with business relations.

Additionally, the only mention of the '289 patent was in Eastern's March letter. The June letter, sent to the industry, only concerned the infringement of the '539 patent. So, even if the '289 patent was invalid, the plaintiff is limited to the tortious interference it suffered as a result of the defendant's bad faith in sending the March letter. B & G does not appear to have suffered any damage to business relations by receipt of that letter. Rather, B & G consulted with its own patent counsel and advised Eastern of that attorney's opinion. There has been no indication that B & G changed its product line or altered its practices in any way based on Eastern's initial letter. Certainly, B & G has not shown how any of its business relationships with a third party were compromised after receipt of the March letter.

### b. *Informing the Industry of Potential Infringement*

The plaintiff also claims that because Eastern's June letter to the entire industry did not specifically note that B & G's goods were not infringing, the defendant acted in bad faith. Eastern's June letter did not identify the potentially infringing parties by name and contained language to the effect that while some companies were infringing the '539 patent, others were producing non-infringing goods. (Def. Rule 56.1 Interference Stat., Exh. A at EC 0000047). The plaintiff still claims that "in making the general charge of infringement [the June letter] without retracting the direct charge of infringement [the March letter]," the defendant "was endeavoring to expand the competitive benefit of the direct charge of infringement and publication thereof to Steinberg Neckwear, to the entirety of its customers." (Pl. Memo. on Interference at 8–9). The only customer of Eastern's that was informed of the direct charge of infringement, and then received the subsequent general letter, was Steinberg Neckwear. The plaintiff's claim of interference must therefore be limited to any loss of business it suffered with Steinberg Neckwear as a result of both infringement charges.

Federal law has uniformly upheld a patentee's right to publicize the issuance of patents and the potential infringement of them. In general, " 'federal patent law bars the imposition of liability [under federal or state law] for publicizing a patent in the marketplace unless the plaintiff can show that the patent holder acted in bad faith.' " *Zenith Electronics Corp. v. Exzec, Inc.,* 182 F.3d 1340, 1353 (Fed.Cir. 1999) (quoting *Hunter Douglas,* 153 F.3d at 1336). "Communication of accurate information about patent rights, whether by direct notice to potential infringers *or by publicity release,* does not support a finding of bad faith." *Mikohn Gaming Corp.,* 165 F.3d at 898 (emphasis added). In *Mikohn Gaming Corp.,* the defendant issued a general press release specifically referring to the plaintiff's alleged infringement of its patent. *Id.* at 894. The court found that this publication was well within the rights of the defendant patent owner. *Id.* at 898. Accordingly, in this case, where the defendant did not even identify B & G by name in its industry-wide letter, there is even less support for a finding of bad faith. Eastern was well within its

rights as a patent holder to inform the marketplace that its patents were being infringed. If Eastern had known that there was no infringement or that the patent was invalid, the plaintiff's claim may have weight. *See Zenith Electronics Corp.*, 182 F.3d at 1354. However, the plaintiff has shown no evidence that Eastern acted in bad faith. Because Eastern's actions were within its rights as a patent holder, there is no tortious interference.

#### 2. *Damages*

Finally, the defendant claims that the plaintiff has not shown any damages in connection with Eastern's actions. (Def. Memo. on No Interference at 11). Since this does not involve a determination of federal patent rights, New York law governs. New York courts have held that damages "must be pleaded and proved as an essential element of a cause of action for tortious interference with business relations." *NRT Metals, Inc. v. Laribee Wire, Inc.*, 102 A.D.2d 705, 706, 476 N.Y.S.2d 335, 338 (1st Dep't 1984). The New York Court of Appeals has held that "in an action against a third party for tortious interference ..., the elements of damages ... would be those recognized under the more liberal rules applicable to tort actions." *Guard–Life Corp. v. S. Parker Hardware Manufacturing Corp.*, 50 N.Y.2d 183, 197 n. 6, 428 N.Y.S.2d 628, 636 n. 6, 406 N.E.2d 445 (1980) (citing Restatement, Torts 2d § 774A, Comment C.). In this case, the plaintiff did not plead damages in the complaint or in any of its moving papers on this motion. Moreover, B & G has not provided any proof of how it was damaged by the defendant's conduct. It has not shown that its business relationship with Steinberg Neckwear or any other recipient of the June letter was in any way damaged because of the letter. Since the existence of damages is an essential element of tortious interference with business relations, *see NRT Metals, Inc.*, 102 A.D.2d at 706, 476 N.Y.S.2d at 338, the plaintiff has failed to proffer sufficient evidence on which the defendant could be found liable.

#### *Conclusion*

In this case, there are genuine issues of material fact in dispute with regard to the plaintiff's motion for summary judgement on the validity of the '014 patent. Because of these issues, I recommend that summary judgment be denied on that issue. Accordingly, I recommend that summary judgment also be denied on both the plaintiff's and the defendant's motions for summary judgment on patent infringement. On the plaintiff's motion for summary judgment on tortious interference, there is not clear and convincing evidence from which a reasonable jury could conclude that Eastern alleged patent infringement in bad faith. Therefore, for the reasons set forth above, I recommend that the plaintiff's motion for summary judgment on that issue be denied. Furthermore, since there are no disputed issues of fact involved, and the plaintiff is unable to show the alleged tort, I recommend that the defendant's motion for summary judgment on no tortious interference be granted.

Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(e) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days to file written objections to this report and recommendation. Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Richard M. Berman, Room 201, 40 Foley Square, New York, New York, 10007 and to the chambers of the undersigned, Room 1960, 500 Pearl Street, New York, New York 10007. Failure to file timely objections will preclude appellate review.

Dated: March 31, 2003.

APPENDIX 1

**U.S. Patent**

**5,556,014**

*FIG. 1*

*FIG. 2*

U.S. Patent          5,556,014

32 THE NECKTIE KNIT SUPPERT CLIP

38
36b
36d
36c

THE PLASTIC FORMING PERTION

34a
36a
36
36b
34

FIG. 4

38b

38 THE LEVER

-38b-1
THE OPENIA

36b-1
38a
36d-1

36d
36b

THE METAL PORTION

FIG. 7

FIG. 8

HANGAR 18 PLUS
CLIP 34, 36, 38

FIG. 9

HANGAR 18 PLUS LEVER 38